**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Case No. 16-CV-710-CMA-GPG

DR. DAVID KUNTZ,

      Plaintiff,

v.

DELTA COUNTY BOARD OF COMMISSIONERS,
C. DOUGLAS ATCHLEY, Delta County Commissioner, in his official capacity,
C. BRUCE HOVDE, Delta County Commissioner, in his official capacity, and
MARK ROEBER, Delta County Commissioner, in his official capacity,

      Defendants.

---

**ORDER ADOPTING RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

---

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).  (Doc. # 24.)  On June 2, 2016, this Court referred the Motion to United States Magistrate Judge Gordon P. Gallagher pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  Upon review, Magistrate Judge Gallagher recommended that this Court grant Defendants' Motion to Dismiss.  (Doc. # 38.)  For the following reasons, the Court adopts that Recommendation and dismisses the case.

## I.    BACKGROUND

Plaintiff, Dr. David Kuntz, wanted to add a new chicken barn and egg-laying operation to his existing cattle ranch and wheat farm in unincorporated Delta County. (Doc. # 1 at 3).  Pursuant to the Delta County Regulation for Specific Developments

(DCR), Defendants, Delta County Board of Commissioners *et al*., required Plaintiff to undergo an application and approval process before adding the egg-laying operation. (Doc. # 1 at 4–5.)  Defendants first denied Plaintiff's multiple requests for approval but ultimately granted his application in October 2015.  (Doc. # 1 at 5.)  Defendants reserved the right to revoke the approval for violation of any conditions imposed therein. (Doc. # 1 at 5.)

In March 2016, Plaintiff initiated this suit against Defendants, raising one substantive claim for relief: a perceived equal protection violation under the Fourteenth Amendment, 42 U.S.C. §1983, and the Colorado Constitution, Article II, Section 25.[1] (Doc. # 1 at 9.)  Plaintiff argues that, through their enforcement of the DCR, Defendants treat individuals engaged in egg-laying operations differently from similarly-situated individuals engaged in chicken-raising operations.[2]  (Doc. # 1 at 7.)  More specifically, he alleges that a farmer, like himself, who wants to add an egg-laying operation to his repertoire is required to undergo review under the DCR while a farmer who wants to add the rearing of live chickens to his repertoire is not.

In May 2016, Defendants filed the instant Motion to Dismiss, requesting that the Court dismiss Plaintiff's Complaint for failing to adequately plead an essential element of his equal protection claim—that the DCR treats similarly-situated individuals differently.  (Doc. # 24 at 7.)  Defendants contend that the DCR plainly requires any new

---

[1] Plaintiff also seeks a declaratory judgment to shield himself from possible revocation of Defendants' approval of his egg-laying operation.  (Doc. # 1 at 10.)

[2] An "essential element" of an equal protection claim is "the allegation that a plaintiff was treated differently from those similarly situated."  *Katz v. City of Aurora*, 85 F. Supp. 1012, 1020 (D. Colo. 2000).

operation to undergo review, regardless of whether the operation is created to sell eggs or rear live chickens.  (*Id.*)

Magistrate Judge Gallagher agreed with Defendants' interpretation of the DCR and recommended that this Court dismiss Plaintiff's Complaint as not cognizable under Fed. R. Civ. P. 12(b)(6).  (Doc. # 38 at 8–9.)  Plaintiff objects to the Recommendation in its entirety.  (Doc. # 41.)

## II.   STANDARD OF REVIEW

After a magistrate judge issues a recommendation on a dispositive motion, Fed. R. Civ. P. 72(b)(3) requires that the district judge conduct a *de novo* review of any part of the recommendation that has been properly objected to.  In conducting the review, a "district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*  Any arguments raised for the first time in objections are deemed waivable and need not be considered by the district court.  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## III.   LAW

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for failure to state a claim if it appears beyond a doubt that the plaintiff can plead no set of facts in support of his claim that would entitle him to relief.  *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).  Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory.  *Golan*, 310 F. Supp. 2d at 1217.  In reviewing a motion to dismiss, courts take all well-pleaded allegations in the plaintiff's complaint as

true and construe the allegations in the light most favorable to plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

When, as here, a court's review of a Rule 12(b)(6) motion hinges on interpreting a statute or county enactment, ordinary rules of statutory construction apply. *See Treece, Alfrey, Musat & Bosworth, PC v. Dep't of Fin.*, 298 P.3d 993, 996 (Colo. App. 2011). When interpreting a statute, a court's "primary task . . . is to give effect to the intent of the drafters, which [the court does] by looking to the plain language." *Id.* The court reads "statutes and municipal enactments in such a way as to give effect to every word," considering "the language used in the context of the statute or code as a whole" and "construing each [provision] consistently and in harmony with the overall statutory design." *Id.* Courts "should reject interpretations that will render words or phrases superfluous and must avoid interpretations that produce illogical or absurd results." *Id.*; *see also Lagae v. Lackner*, 996 P.2d 1281, 1284 (Colo. 2000).

## IV.    ANALYSIS

As pertinent here, the DCR provides that no person

> shall engage, cause, or permit any new or expanded specific development . . . unless such proposal has been reviewed in accordance with the review procedures and performance standards outlined in this [DCR].

(Doc. # 1-1 at 4, Art. II § 1.)

Certain activities, however, are exempt from this review, including "[a]gricultural uses of the land that produce agricultural and livestock products that originate from the land's productivity, except for new confined animal operations . . . ." (*Id.* at 2, Art. I, §

4

5.B.)  "Confined animal operations" include "commercial feedlots, dairies, kennels, poultry and fur farms" but not "[t]he rearing of livestock, where offspring are raised on the ranch or farm and are fed out."  (*Id.* at 7, Art. II § 4.A.14, Art. VII § 2.)

Plaintiff takes this "fed out" exemption to mean that farmers who "hatch and raise chickens" are always exempt from the DCR's requirements, regardless of whether they are running a pre-existing operation or starting a new one.  (Doc. # 1 at 7, ¶ 23.)  He argues that this exemption therefore treats chicken-raising farming operations and egg-laying operations, such as his, unequally.  The Court disagrees with that reading.  As the Court reads the DCR, this "fed out" exemption applies only to farmers who hatch and raise "offspring" that are "rear[ed]" from a pre-existing operation, i.e. from a chicken they already own.  (Doc. # 1-1 at 7, Art. II § 4.A.14.)  *See Rear*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/rear (last visited Feb. 3, 2017) (defining "rear" as "to breed and raise (an animal) for use or market."); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) (The court "may consult a dictionary to determine the plain meaning of a term.").  If, however, a farmer begins a new chicken-raising operation, this "rearing . . . [of] offspring" provision would not apply to him.  He would instead have to undergo review, just as any other "*new* confined animal operation" would, including a new egg-laying operation.  (Doc. # 1-1 at 2, 7.)

In other words, in the Court's view, the DCR treats all *new* confined animal operations the same.  Indeed, Article I, Section 5, plainly states that "new confined animal operations" are not exempt from DCR review.  (Doc. #1-1 at 2.)  It does not differentiate egg-laying operations from chicken-raising operations—only new

operations from pre-existing operations that feed out offspring.  Thus, a farmer seeking

to start a chicken operation on a farm that does not currently contain chickens will

undergo review, regardless of whether the farmer intends to sell the offspring, or the

eggs, of the chickens raised there.

Reviewing and harmonizing the fed out provision with the broader context and

purpose of the DCR supports the Court's reading of the statute.  *See Conrad*, 585 F.3d

at 1381 (The Court may "take into account the broader context of the statute as a whole

when ascertaining the meaning of a particular provision.").  The DCR aims to "[p]romote

the health, safety, and general welfare of the present and future residents of Delta

County," to "[m]anage changes to specific developments that may have an adverse

effect on neighboring landowners and other residents of Delta County," to "[p]reserve

and protect property rights," "[p]reserve the character of the existing rural and urban

communities and neighborhoods in Delta County," and "[p]rotect the agricultural land,

lifestyle, and economy of Delta County."  (Doc. # 1-1 at 1, Art. I, § 4.).  Based on these

provisions, the Court agrees with Magistrate Judge Gallagher's summation of the DCR's

overall purpose: "keep the general nature of the communities the same, respect what

exists now such as urban, rural, and farming lifestyles, allow for moderate and

measured growth and change, do not take away what folks already have."  (Doc. # 38 at

6.)  To conclude, as Plaintiff suggests, that the DCR permits a farmer to initiate a brand

new chicken-raising operation, by building a coop or purchasing myriad chickens,

without undergoing the approval process would be inconsistent with this purpose.[3]  As

Magistrate Judge Gallagher noted,

> The argument that a current cattle farmer could purchase an
> endless number of chickens and sell the live young, all the
> while not running afoul of the DCR for failing to seek review,
> so long as no eggs were sold, would be an absurd
> interpretation of the [DCR].

*See Lagae*, 996 P.2d at 1284 (courts must avoid interpretations that produce absurd

results.)

Accordingly, the Court concludes that Plaintiff's equal protection claim is

premised on a misinterpretation of the DCR.  The Court, therefore, agrees with

Magistrate Judge Gallagher that the Complaint cannot withstand Defendants' Motion to

Dismiss.  Based on this conclusion, the Court need not address the parties' rational

basis arguments.

## V.    CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. Plaintiff's objection to the Recommendation (Doc. # 41) is OVERRULED;

2. the Report and Recommendation of United States Magistrate Gordon P.

   Gallagher (Doc. # 38) is AFFIRMED AND ADOPTED as an Order of this

   Court;

3. Defendants' Motion to Dismiss (Doc. # 24) is GRANTED; and

4. this case is DISMISSED WITH PREJUDICE.

---

[3] Of note, Plaintiff has not alleged a single incident where a farmer in Delta County started a
new chicken-raising operation and was exempt from DCR review.

DATED:  February 7, 2017                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge